UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CLINT MARTINEZ

VERSUS

JAMES D. CALDWELL, ET AL.

CIVIL ACTION

NO. 08-617-JJB

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

The matter before the Court is Petitioner Clint Martinez's petition for writ of habeas corpus. (Doc. 1.) On November 2, 2009, Magistrate Judge Christine Noland issued a Report and Recommendation recommending that the Court dismiss the petition with prejudice. (Doc. 24.) Respondent and Petitioner each filed objections[1] (docs. 25 & 26) and responses to one another's objection (docs. 27 & 28). The Court held oral argument on the matter on January 26, 2010. The parties then submitted supplemental memorandums, specifically addressing whether this Court should conduct an independent evidentiary hearing. (Docs. 32 & 33.) The Court has considered the parties' arguments and the Report in Recommendation in undertaking this de novo review. For the following reasons, the petition for writ of habeas corpus is GRANTED.

---

[1] Respondent objected to Magistrate Noland's finding that the Court need not give deference to the Louisiana appellate court's legal conclusions pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d)(1). Magistrate Noland did not apply AEDPA deference because Petitioner brought his habeas petition pursuant to 28 U.S.C. § 2241. Section 2241, unlike 28 U.S.C. § 2254, does not require deference to a state court's determinations. Magistrate Noland determined that although the Fifth Circuit has not decided this issue, it would likely follow the majority of federal courts in applying a de novo review standard to a detainee's pretrial petition brought pursuant to § 2241. The Court agrees with Magistrate Noland.

1

**Background**

Petitioner previously proceeded to trial on a second degree murder charge in the 18th Judicial District Court, Parish of Pointe Coupee. The trial ended in the declaration of a mistrial; when Petitioner learned that the State intended to retry him, he filed a motion to quash the indictment as constituting double jeopardy. The Louisiana Supreme Court assigned Judge Jerome M. Winsberg as judge ad hoc to preside over the hearing on the motion to quash. Accordingly, Judge Winsberg conducted an extensive evidentiary hearing. The following facts come from that record.

The trial lasted three weeks and included testimony of forty witnesses and twelve to fifteen experts. After only three hours of deliberations, the jury requested Judge Best's presence in the deliberation room. Upon receiving no objections from counsel for both parties, Judge Best entered the jury room. There, the jurors informed him that they could not reach an agreement, but that the vote currently stood at 9-3 in favor of acquittal. The bailiff, Weldon Jewell, also heard this information.

Upon returning to the courtroom, Judge Best informed counsel that the jury was deadlocked, that the vote stood at 9-3, and either that he did not know the direction of the vote or was not going to tell them.[2] Judge Best testified that

---

[2] Although most of the facts are undisputed, there is significant contention as to what occurred at the side bar conferences because Judge Best held them off the record. Like Judge Winsberg, this Court concludes that the specific facts are irrelevant; what matters is that Judge Best withheld information and the defense agreed to a mistrial.

2

there was a possibility that he said he did not know.  Either way, Judge Best withheld information regarding the direction.

As Judge Winsberg noted, there is not only disagreement, but confusion as to what exactly happened at the sidebar conference.  Apparently, Judge Best and the State believed that the defense was requesting a mistrial; the defense believed that Judge Best and the State were pushing for a mistrial.  However, it's clear that the defense would not have requested or agreed to a mistrial had it known the direction of the vote.

At some point between the conference and the polling of the jurors, Bailiff Jewell directly or indirectly alerted the prosecution to the direction of the vote.  Regardless of timing, Judge Winsberg found that the prosecution had every opportunity to inform the Court, before the declaration of a mistrial, that it had learned the direction of the vote.  The State did not, however, reveal that it had such information, but allowed Judge Best to poll the jury and declare a mistrial.[3]

At the end of the evidentiary hearing, Judge Winsberg orally concluded that Judge Best inadvertently goaded the Petitioner into requesting a mistrial.  Thus, Judge Winsberg quashed the indictment.

---

[3] Petitioner argued that the State, by failing to interrupt the declaration of a mistrial once it had obtained knowledge of the direction of the vote, intentionally goaded the defense into acquiescing to a mistrial.  The Court agrees with Magistrate Noland in that the prosecutor should have immediately notified Judge Best upon learning such information, but cannot find that the prosecutor intended to goad the defense into agreeing to or not objecting to the entry of a mistrial.  *See Board of License Commissioners of the Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (noting that counsel has a continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation).

Upon appeal, the Louisiana First Circuit Court of Appeal reversed, finding that Judge Winsberg applied the wrong legal standard, which requires a finding of "intentional goading," and determined that Judge Best did not intentionally goad the defense into not objecting to a mistrial. The Louisiana Supreme Court denied writ, thus Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.

## Analysis

*A. Must the Court Conduct an Evidentiary Hearing?*

At oral argument the Court requested additional briefing on whether this Court need conduct its own evidentiary hearing in order to weigh the testimony. At issue is whether Petitioner received the requisite "full and fair hearing." *See Townsend v. Sain*, 372 U.S. 293, 312 (1963).

Petitioner argues that he did not receive a full and fair hearing because Judge Best applied the improper legal standard in evaluating the evidence. *See Williams v. Lockhart*, 849 F.2d 1134, 1138 (8th Cir. 1988) (stating that "to the extent the state court applied an erroneous legal standard in determining the merits of [petitioner's] ineffective assistance claim he was denied a full and fair hearing in the state proceeding").

However, as Respondent and Magistrate Noland rightly noted, Judge Winsberg held an incredibly extensive evidentiary hearing, including seventeen witnesses, oral argument, and post-hearing briefing. Even if he ultimately applied the wrong legal standard, which shaded his ultimate conclusion, he did

4

compile thorough factual evidence.  Although a new hearing would provide the Court an opportunity to observe the witnesses as they testify, it would also suffer from the obscurity of time.  Because the Court has sufficient factual evidence to make its own determination regarding Petitioner's double jeopardy claim, there is no need to grant a new evidentiary hearing.

*B. Did Judge Best Intentionally Goad Petitioner into Moving for a Mistrial*

The Double Jeopardy Clause prevents the government from trying a person more than once for the same offense.  U.S. Const. amend. V.  Double Jeopardy bars retrial—even if the defendant asks for a mistrial or did not object—when a prosecutor or trial judge goads a defendant into requesting a mistrial.  *Oregon v. Kennedy*, 456 U.S. 667, 672-73 (1982).  In such circumstances, retrial is barred only when a prosecutor or trial judge "intentionally goads the defense," and not where mistake, carelessness, harassment, overreaching, bad faith, or improper behavior leads to the defendant not objecting.  *Id.* at 674-75*; United States v. Shelley,* 405 F.3d 1195, 1200 (11th Cir. 2005).

Judge Winsberg, who was in the best position to weigh the testimony, concluded that Judge Best "*inadvertently* goaded the defendant to ask for the mistrial."[4]  Thus, instead of judging the facts against an *intentional* goading standard, Judge Winsberg stopped once he found that they amounted to

---

[4] Ruling Mot. Quash Indictment 25 (doc. 1-1) (emphasis added).

*inadvertent* goading. He never actually considered the question of intent.[5] This Court, therefore, now analyzes the record to determine whether it supports a finding of intentional goading.

In viewing the question of intent, a subjective fact, a court "should rely primarily upon the objective facts and circumstances of the particular case." *Kennedy*, 456 U.S. at 680 (Powell, J., concurring). Thus, rather than relying on Judge Best's testimony that he wanted deliberations to continue, the Court analyzes the objective facts.

When confronted with the jurors, Judge Best could have ordered the jury to further deliberate, rather than allowing a mistrial after a mere three hours of deliberation. *See State v. Alexander*, 430 So. 2d 621, 626 (La. 1983) (recognizing that when confronted with jurors that cannot come to an agreement, a court may "impress upon them the importance of the case, urge them to come to an agreement, and send them back for further deliberation"). However, a decision of whether to do so lies within the sound discretion of the trial judge and courts do not disturb that decision "in the absence of palpable abuse." *Id.* Therefore, the Court does not find fault with Judge Best's decision to confront the attorneys with the jury's deadlock rather than ordering further deliberations.

---

[5] Although the adverb "inadvertently" is synonymous with "unintentionally," it is likewise synonymous with other adverbs, including "carelessly, heedlessly, negligently, rashly, and recklessly." *Available online:* http://thesaurus.com/browse/inadvertently, (last visited March 17, 2010). Nothing in Judge Winsberg's statement confirms that his use of the word reflected a legal finding that Judge Best's actions were unintentional.

The Court does, however, find fault with Judge Best's actions upon returning from the jury room. Instead of alerting the attorneys to the direction of the vote, he deliberately withheld that information. During cross-examination, Judge Best testified, "It was crucial that neither side know . . . [w]hat the nine stood for and what the three stood for."[6] He then confirmed that it was crucial because he "felt that if the defense had found out the vote was nine to three not guilty they would not have moved for a mistrial."[7]

These statements, more than Judge Best's claim that he wanted deliberations to continue, evidence his intent. For, not only did Judge Best withhold information he learned in the deliberation room, he chose to withhold that portion of information that he thought would have otherwise prompted the defense into refusing a mistrial. Accordingly, his stated reasons behind his actions illustrate his intent: for the defense to move for a mistrial.[8]

Indeed, if Judge Best had truly desired further deliberations, he certainly could have avoided the defense moving for a mistrial by divulging the withheld information. He knew that the defense assumed the vote stood at 9-3 in favor of conviction; he also knew that that assumption drove the defense to move for a

---

[6] Tr. Mot. to Quash Indictment 25 (doc. 1-5).
[7] *Id.*
[8] Even when Judge Best polled the jury to determine whether they had reached an impasse, he, rather than the jury foreman, first suggested that the jury was hung. When the foreman began reporting the jury's decision, the foreman said, "We came up with a--," at which point Judge Best interrupted him, suggesting, "With a hung Jury?" Tr. Jury Verdict 3 (doc. 1-7).

7

mistrial.[9]  By revealing all that he learned from the jury, he would have removed that impetus, thereby allowing further deliberations.

Instead, he intentionally chose which information to share and which to withhold.  His retention of information directly led to the defense moving for or agreeing to a mistrial.  This inducement deprived Petitioner of the option to take his chances with this particular jury, which was one vote away from a favorable verdict; thus, the Court feels compelled to deny reprosecution under the Double Jeopardy Clause.  Cf. *United States v. Jorn*, 400 U.S. 470, 485 (1971) ("[W]here the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his valued right to have his trial completed by a particular tribunal"); *Randall v. Rothwax*, 78 N.E.2d 494, 499 (N.Y. 1991) (preventing retrial where the trial judge mistakenly informed the defense counsel that the jury currently stood deadlocked at 10-2 in favor of conviction, where it really stood in favor of acquittal, and thus caused the defense to enter a plea agreement before return of the verdict).

## Conclusion

The Court finds that Judge Best erred by revealing the weight of the vote while withholding the direction.  That error, coupled with Judge Best's admission that he withheld the direction because he thought that if he revealed it the defense would not request a mistrial, illustrates his intent.  Therefore, the Court

---

[9] Tr. Mot. to Quash Indictment Pr. 117-18 (doc. 1-5).

finds that Judge Best intentionally goaded the defense into either moving for or not objecting to a mistrial.

Accordingly, Petitioner's petition for writ of habeas corpus (doc. 1) is GRANTED.

Signed in Baton Rouge, Louisiana, on March 29th, 2010.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**